**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BARBARA LIST, et al.,** ) | **CASE NO.  5:05 CV 1556** |
| ) | |
| **Plaintiffs,** ) | **JUDGE PETER C. ECONOMUS** |
| ) | |
| **v.** ) | |
| ) | |
| **AKRON MUNICIPAL COURT, et al.,** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| ) | |
| **Defendants.** ) | |

This matter is before the Court upon the Motion to Dismiss/Motion for Judgment on the Pleadings to Dismiss the Officially Named Municipal Court Judges (Dkt. #11) and the Motion for Summary Judgment, filed by Defendants The Honorable John Holcomb, The Honorable Alison McCarty, and The Honorable Lynne Callahan, In Their Individual Capacities (Dkt. #12).

**I. Background**

Defendant, The Akron Municipal Court (the "Municipal Court") employed Plaintiffs Barbara List ("List") and Chanin Holland ("Holland").  The Municipal Court hired List in September 1980.  (Dkt. #12, Ex. 1, Affidavit of the Honorable John Holcomb ("Holcomb

Aff.") Exs. D, F). In 1989 List attained the position of Small Claims Coordinator. (Holcomb Aff. Ex. F). The Municipal Court hired Holland on February 3, 1992 as a Deputy Service Bailiff. (Holcomb Aff., Exs. A, C). In August 2000, the Municipal Court reclassified Holland to the Court Office Manager position, which was still within the Service Bailiff Department. (Holcomb Aff. ¶ 10, Ex. C).

In 2003, Defendants the Honorable John Holcomb ("Holcomb"), the Honorable Allison McCarty ("McCarty") and the Honorable Lynne S. Callahan ("Callahan") comprised three of the Municipal Court's six judges. (Holcomb Aff.). Hiring and firing decisions within the Municipal Court were made by a majority vote of the Municipal Court's six judges. (Holcomb Aff. ¶ 4). These decisions were typically memorialized in an Entry, which was either signed by a majority of the Municipal Court's judges, or by the administrative judge. (Holcomb Aff. ¶ 4).

In May 2003, Judge Brian Stromer was appointed to fill a vacancy created by a deaparting judge. (Holcomb Aff. ¶ 7). Following Judge Brian Stormer's appointment to the bench, the Judicial Defendants and Judge Stormer reviewed the personnel problems within the Municipal Court and made the decision to terminate seven employees, including Plaintiffs. (Holcomb Aff. ¶ 7). The Judicial Defendants and Judge Stormer terminated these employees on June 6, 2003. (Holcomb Aff., Exs. B, C, E, and F).

On June 6, 2005, Plaintiffs filed a Complaint asserting claims under 42 U.S.C. § 1983 and Ohio state law. The Complaint named as defendants the Municipal Court, The City of Akron, and in their official capacities, Court Administrator Ken Kuckuck ("Kuckuck"), and Judges Holcomb, McCarty and Callahan. The Complaint also named

Holcomb, McCarty and Callahan as defendants in their individual capacities (collectively "Individual Judicial Defendants"). In their Answer to the Complaint, the Individual Judicial Defendants asserted the defense of qualified immunity. (Dkt. #4). In their Answer, the official capacity defendants asserted the defense of absolute immunity. (Dkt. #3).

On August 30, 2005, the Court conducted a Case Management Conference ("CMC"). During CMC, the Court identified that the Individual Judicial Defendants had asserted the issue of qualified immunity, and the Court, consequently, stayed discovery and directed the Individual Judicial Defendants to submit motions regarding qualified immunity. (Dkt. #9). Also during the CMC, the Court identified that the official defendants had asserted the issue of Eleventh Amendment immunity, and the parties stipulated that Kuckuck and the Akron Muncipal Court were immune from suit and were not proper defendants. (Dkt. #9). The Court ordered Plaintiffs to amended their Complaint accordingly, and on September 28, 2005, Plaintiffs submitted an Amended Complaint naming Holcomb, McCarty, and Callahan in both their individual and official capacities.[1] (Dkt. #10).

Consequently, the remaining defendants in this action are Holcomb, McCarty, and Callahan in their individual and official capacities ("Individual Judicial Defendants" and "Official Judicial Defendants," respectively).

---

[1] The Amended Complaint also names several John Doe defendants. These defendants, however, have not been identified nor has service been perfected upon these defendants. Accordingly, Defendants John Doe 1, John Doe 2, Jane Doe 1, and Jane Doe 2 are **DISMISSED** from this action pursuant to Federal Rule of Civil Procedure 4(m).

3

**II.  The Official Judicial Defendants**

The Official Judicial Defendants have moved for judgment on the pleadings, based on sovereign immunity and ask to be dismissed from the lawsuit.  (Dkt. #11).

**A.  Standard of Review — Judgment on the Pleadings**

Rule 12(c) motions for judgment on the pleadings are subject to the same analysis as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir.2001).  A district court faced with a defendant's motion for judgment on the pleadings "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief."  Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted).  See also Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Conley v. Gibson, 355 U.S. 41, 45–46, (1957).  The merits of the claims set forth in the complaint are not at issue on a motion for judgment on the pleadings.  Consequently, a complaint will be dismissed pursuant to Rule 12(c) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  The Court, however, need not accept as true legal conclusions or unwarranted factual inferences.  See Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987).

**B. Law and Analysis — Official Capacity**

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802 (2003) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)); Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). "As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit 'imposes liability on the entity that he represents.'" Alkire, 330 F.3d at 810 (quoting Brandon v. Holt, 469 U.S. 464, 471–72 (1985)); Graham, 473 U.S. at 166 ("Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). Thus, naming Judges Holcomb, McCarty, and Callahan in their official capacity equates to naming the Akron Municipal Court, the government entity that employs them. See Alkire, 330 F.3d at 810.

Plaintiffs have stipulated that the Akron Municipal Court is immune from suit. (Dkt. #9; Dkt. #10). The Official Judicial Defendants "stand in the shoes" of the Akron Municipal Court and, therefore, are also immune from suit. This immunity presents an insurmountable bar to relief. See Rauch, 576 F.2d at 702. Accordingly, the Official Judicial Defendants' motion for judgment on the pleadings, (Dkt. #11), is **GRANTED** and all claims asserted against the Official Judicial Defendants are **DISMISSED**.

5

**III. Individual Judicial Defendants**

The Individual Judicial Defendants have moved for summary judgment on the basis of qualified immunity.[2] (Dkt. #12).

**A. Standard of Review — Summary Judgment**

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys

---

[2]The Individual Judicial Defendants' motion seeks summary judgment on all claims. (Dkt. #12). The Court, however, suspended discovery so that it could determine the initial issue of qualified immunity, and the Court directed the Defendants to brief that issue. (Dkt. #9). The Court, therefore shall consider the arguments made in the Individual Judicial Defendants' motion for summary judgment insofar as they address the issue of qualified immunity.

6

v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)). The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250). "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

**B. Law and Analysis — Qualified Immunity**

At the outset, the Court notes that Plaintiffs have failed to respond to the Individual

Judicial Defendants' motion for summary judgment (as well as the Official Judicial Defendants' motion for judgment on the pleadings). The Sixth Circuit has held that where the moving party meets its initial burden and the nonmoving party fails to respond, the nonmoving party's "opportunity is waived and its case wagered." Guarino v. Brookfield Township Trs., 980 F.2d 399, 405 (6th Cir. 1992). The district court must, however, still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." Id. at 407. In addition to arguments endorsed by the moving party, the district court must consider inferences that are apparent from the designated evidence and favorable to the nonmoving party. Id. Thus, where a defendant meets its burden in moving for summary judgment on unopposed issues, summary judgment and/or dismissal is proper. See Cacevic v. City of Hazel Park, 226 F.3d 483, 492 (6th Cir. 2000); Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991).

Title 42 U.S.C. § 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law. See 42 U.S.C. § 1983. When officials are sued in their individual capacities, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity. Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir. 1992).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526. The privilege is an "immunity from suit

rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. Consequently, qualified immunity questions must be resolved at the earliest possible stage in litigation. Saucier v. Katz, 533 U.S. 194 (2001).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341. Government officials are entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a party is entitled to qualified immunity is typically a question of law for the court to decide. Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir.1989). When the facts on which the question of immunity turns are in dispute, however, it is for the trier of fact to make the factual findings underlying resolution of the qualified immunity issue. Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir.2000).

In order to prevail in a Section 1983 action against a government official, a plaintiff must overcome qualified immunity by establishing that the official violated a "clearly established" constitutional right and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Consequently, a plaintiff opposing qualified immunity must answer this threshold question: whether the facts, taken in the light most favorable to the plaintiff, demonstrate that an official's conduct violated a

9

constitutional right. See Saucier, 533 U.S. at 198; Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003). If no constitutional right would have been violated were the allegations established, the Court must terminate the qualified immunity inquiry and dismiss the suit. See Saucier, 533 U.S. at 198. On the other hand, if the plaintiff answers the question in the affirmative, "the next, sequential step is to determine whether the right was clearly established." Id. With regard to this second step, the plaintiff must rely on either Supreme Court precedent, precedent from this Court, or cases from other courts which "point unmistakably to the unconstitutionality of the conduct and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." Mumford v. Zieba, 4 F.3d 429, 432-33 (6th Cir.1993). If the plaintiff fails to establish either the existence of a constitutional violation or that such a violation was clearly established, the Court must dismiss the action.

Accordingly, the Court shall first determine whether Plaintiffs have presented sufficient facts to demonstrate that the Individual Judicial Defendants' conduct violated their constitutional rights. Plaintiffs contend that the Individual Judicial Defendants violated their First and Fourteenth Amendment rights by terminating Plaintiffs due to their political affiliations.

The Supreme Court, in a trilogy of cases, has determined that, with limited exceptions, the Government cannot condition public employment on the basis of political affiliation. See Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980);

and Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). Accord Caudill v. Hollan, 431 F.3d 900, 909 (6th Cir. 2005); Bauer v. Montgomery, 215 F.3d 656, 659 (6th Cir. 2000). The practice of patronage dismissals—i.e., dismissals for failure to support a particular party or candidate—clearly infringes First Amendment interests. See Elrod, 427 U.S. at 360. The Supreme Court, however, has noted an exception to this general rule: "party affiliation may be an acceptable requirement for some types of government employment," specifically, policymaking positions. Branti, 445 U.S. at 517. Therefore, in order to state a political patronage discrimination claim, the plaintiff bears the initial burden of demonstrating a prima facie case that he or she was discharged due to his or her political affiliation. See id. The defendant then bears the burden of showing that the plaintiff's job falls within an exception for policymaking positions. Id.

The Individual Judicial Defendants assert that Plaintiffs cannot meet the first prong of the qualified immunity analysis—that the Individual Judicial Defendants' conduct violated a constitutional right. See Saucier, 533 U.S. at 198; Crockett, 316 F.3d at 579. Defendants contend Plaintiffs cannot demonstrate a constitutional violation because Plaintiffs cannot meet their prima facie burden of demonstrating their terminations were politically motivated.

In order to establish a prima facie case of politically motivated discharge, a plaintiff must prove by a preponderance of the evidence that (1) his conduct was constitutionally protected and (2) that the protected conduct was a substantial factor in the decision to terminate him. See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287

(1977); accord Kreuzer v. Brown, 128 F.3d 359, 363 (6th Cir. 1997). This showing may be made by direct or circumstantial evidence. See Kreuzer, 128 F.3d at 363; see also Lucas v. Monroe County, 203 F.3d 964, 975 (6th Cir. 2000) (quoting Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991)) ("Victims of heavy-handed uses of the spoils system are not limited to redress in only those (relatively rare) instances in which a 'smoking gun' can be produced. To the contrary, we have held, time and again, that circumstantial evidence alone can support a finding of political discrimination."). Plaintiffs, however, fail to provide affirmative evidence, direct or circumstantial, of a political motivation as the substantial factor in their terminations. See Street, 886 F.2d at 1479 ("The respondent…must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

Plaintiffs allege "that their termination was motivated by politics and was because of their political affiliation and because they did not actively support the local Republican party and/or Judge Holcomb in his campaign to be re-elected to the Municipal Court." (Amended Complaint ¶ 17). Plaintiffs, however, provide no affirmative evidence to support this allegation. Instead, Defendants provide evidence rebutting this allegation.

First, the terminated employees were of varied political affiliations.[3] Plaintiffs were

---

[3] In Ohio, voters do not register their party affiliation when registering to vote; rather, a person's political party affiliation is determined by choosing to vote a party ballot at a partisan Primary Election. See OHIO REV. CODE §§ 3513.05, 3513.19(A)(3)(a). That is, one identifies his or her party affiliation in Ohio by voting in primary elections; there is no mechanism in place to "register" as a Republican or Democrat. Moreover, an individual only retains his or her affiliation with a party for the two years following participation in

12

terminated at the same time as five other Municipal Court employees. (Holcomb Aff. ¶ 7). Of the terminated employees, one, Doug Frase, was not even eligible to vote for or against any of the Defendants[4]; another, Barbara Vassel was affiliated with the Republican party, (Dkt. #12, Ex. 8); and Plaintiff Holland's voting record is the only record demonstrating a party affiliation other than Republican. (Dkt. #12, Ex. 4). The remaining terminated employees, including Plaintiff List[5] possess voting records demonstrating no party affiliation—no participation in a party primary, see OHIO REV. CODE § 3513.19(A)(3)(a)—within two years prior to the June 2003 employment termination date. (Dkt. #12, Exs. 3, 5, 6, 7, 8). Second, of the four judges making up the majority in the decision to terminate Plaintiffs and the other five Municipal Court employees, the affiliation

---

its primary. See id. And an individual loses his or her affiliation with a party as soon as he or she votes in another party's primary. Id. The Court, therefore, in designating a party or individual's political affiliation, states only that such a party or individual's Certified Voter Registration demonstrates a voting pattern registering his or her political affiliation pursuant to O.R.C. § 3513.19(A)(3)(a). The Court is aware that activities beyond an individual's voting record may demonstrate an individual's political affiliation. The only evidence presented to the Court, however, is the voting records of the parties and certain individuals. The Court, therefore, for purposes of this opinion, will evaluate political affiliation solely upon an individual's voting record.

[4]Doug Fase was a resident of Stark County, and therefore, unable to vote in Summit County where the Municipal Court is located. (Holcomb Aff., Ex. P.).

[5]Defendants assert that List's party affiliation is Republican. A review of List's submitted voting record demonstrates otherwise. During the two years prior to her date of termination, June 2003, List's voting record in primary elections demonstrates no party affiliation. See OHIO REV. CODE § 3513.19(A)(3)(a); (Dkt. #12, Ex. 3).

13

of one judge, Judge Stormer, was not Republican.[6] (Dkt. #12, Ex. 2). Finally, Judge Holcomb ran unopposed in his 2001 re-election campaign and is unaware whether any of the terminated employees supported or did not support his candidacy. (Holcomb Aff. ¶ 8).

Each of these facts is inconsistent with the allegation that the Judicial Defendants terminated Plaintiffs' employment because "they did not actively support the local Republican party and/or Judge Holcomb in his campaign to be re-elected to the Municipal Court." (Complaint ¶ 17). More importantly, Plaintiffs do not dispute these facts and provide no affirmative evidence that Plaintiffs supported an opponent of Judge Holcomb, that Holcomb was aware of such support, or that Plaintiffs were terminated due to such support. Cf. Caudill v. Hollan, 431 F.3d 900, 909 (6th Cir. 2005) ("Viewing the deposition evidence in the light most favorable to Plaintiffs, there is evidence that Plaintiffs supported Defendant's opponent, that Defendant was aware of that support, and that Defendant failed to rehire Plaintiffs. This evidence raises a triable question of fact as to whether Defendant engaged in patronage dismissals and violated Plaintiffs' constitutional rights.").

Because Plaintiffs have placed no evidence in the record from which a fact-finder could infer that Defendants' actions in terminating Plaintiffs were politically motivated, Plaintiffs fail to demonstrate a prima facie case of political patronage discrimination. Accordingly, Plaintiffs cannot demonstrate a constitutional violation and fail to satisfy the first prong of the qualified immunity analysis.

---

[6] Judge Stormer's voting record demonstrates no participation in a party primary during the two years prior to June 2003. See OHIO REV. CODE § 3513.19(A)(3)(a).

14

Even assuming *arguendo*, Plaintiffs can present a prima facie case of political patronage discrimination, Defendants, nevertheless, can demonstrate they committed no constitutional violation. The Individual Judicial Defendants have provided evidence sufficiently demonstrating that Plaintiffs' jobs fall within the policymaking positions exception to the general rule prohibiting dismissals for political reasons.

Public employees whose political affiliation is relevant to the performance of the job may be terminated from employment solely upon their political affiliation, without violating the First Amendment. See Elrod, 427 U.S. at 347; Branti, 445 U.S. at 507. The Branti court described the types of positions that would qualify for this exception as policymaking positions. Branti, 445 U.S. at 507. The Sixth Circuit, in McCloud v. Testa, 97 F.3d 1536, 1557 (6th Cir. 1996), interpreted Branti by outlining categories that qualify for the policymaking position exception.

> Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted….

Caudill, 431 F.3d at 908 (citing McCloud, 97 F.3d at 1557). The Individual Judicial Defendants, municipal judges, are Category One policymakers. See Newman v. Voinovich, 986 F.2d 159, 164 (6th Cir. 1993) (noting that a judge is a policymaker).

> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions….

15

Caudill, 431 F.3d at 908 (citing McCloud, 97 F.3d at 1557). The Court Administrator is a Category Two employee. See McCrea v. Zieba, 955 F. Supp. 801, 807 (N.D. Ohio 1996) (finding the position of Court Administrator falls within the Branti exception). An appointed Clerk of Court is also a Category Two employee. See Aliff v. Parker, No. C-1-02-092, 2002 WL 32005191, *10–*11 (S.D. Ohio Jul. 23, 2002).

> Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors….

Caudill, 431 F.3d at 908 (citing McCloud, 97 F.3d at 1557). The Individual Judicial Defendants' secretaries and law clerks are Category Three employees. See McCloud, 97 F.3d at1557. Bailiffs are also Category Three employees. See Balogh v. Charron, 855 F.2d 356, 357 (6th Cir. 1988); Wargo v. Moon, 323 F.Supp. 2d 846, 849–50 (N.D. Ohio 2004)

Plaintiffs Holland and List each performed the function of bailiff and are, therefore, each Category Three Employees. Plaintiff Holland was employed as a Court Office Manager, and Holland's job duties included working as a substitute for the Municipal Court judges' personal bailiffs in their absence. (Holcomb Aff. ¶ 10). Plaintiff List was employed as the Akron Court's Small Claims Coordinator, and List's job duties included serving as bailiff for the Akron Court's magistrates[7], researching records for the Akron

---

[7]Magistrates are Category Two policymakers as a matter of law. See Birch, 392 F.3d at 161; Mumford, 105 F.3d at 272. Therefore, their bailiffs are also Category Three advisors. See Caudill, 431 F.3d at 908.

Court's judges and magistrates and relating well to the Akron Court's judges and magistrates. (Holcomb Aff. ¶ 11; Holcomb Aff., Ex. H).

The position of a bailiff is a Category Three patronage exception. See Balogh, 855 F.2d at 357; Wargo, 323 F.Supp. 2d at 850. Even when a position only occasionally requires work for which political loyalty is necessary, the policymaking exception still applies, so long as the employee has at any time control of the lines of communication to a Category One position, such as a judge. See Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 913–14, 914 n.7 (6th Cir. 1991) (finding that regardless of whether plaintiff actually performed political or policy-oriented tasks in the position, a position that controls the lines of communication of a political actor must be "inherently political"). Both Holland and List worked as bailiffs to Category One and Category Two policymakers respectively. Thus, in the function of bailiff, each controlled the lines of communication to policymaking employees, had access to confidential communications and records affecting decisions, and was a confidential employee. See id. A government position need not "fall neatly within one of the McCloud categories" to be entitled to a patronage exception. See Sowards v. Loudon County, 203 F.3d 426, 436 (6th Cir. 2000). Rather, if a position fits with reasonable certainty, then political affiliation can be an appropriate requirement and the employee holding the position can be terminated without violating his or her constitutional rights. Id. at 435. Here, both Holland and List's positions fit with more than reasonable certainty into the Category Three patronage exception. Consequently, assuming *arguendo* Plaintiffs can prove a prima facie case of political patronage

17

discrimination, Defendants nonetheless, have presented sufficient evidence demonstrating Plaintiffs fall into a policymaking position exception.

In summary, Plaintiffs, in the first step of the qualified immunity analysis, must demonstrate the existence of a constitutional violation. See Saucier, 533, U.S. at 198. Plaintiffs allege the constitutional violation at issue is political patronage discrimination in violation of the First and Fourteenth Amendments. Plaintiffs, however, cannot demonstrate a prima facie case of political patronage discrimination, and even if Plaintiffs could present a prima facie case, Defendants have provided sufficient evidence demonstrating Plaintiffs' jobs fall within the exception to the general rule prohibiting political patronage dismissals. Consequently, the Court finds that Plaintiffs fail to demonstrate that the Individual Judicial Defendants violated Plaintiffs' constitutional rights. Therefore, the first prong of the qualified immunity analysis cannot be met. As the first prong has not been met, the Court must terminate the qualified immunity inquiry and concludes that the Individual Judicial Defendants are entitled to qualified immunity. The Individual Judicial Defendants, therefore, are granted summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim.

**IV. Conclusion**

For the foregoing reasons, the Court finds defendants Holcomb, McCarty and Callahan, in their official capacities are absolutely immune from suit. The Official Judicial Defendants' motion for judgment on the pleadings (Dkt. #11) is **GRANTED** and all claims against the Official Judicial Defendants are **DISMISSED**.

In addition, and for the foregoing reasons, the Court finds defendants Holcomb,

McCarty and Callahan, in their individual capacities are entitled to qualified immunity. Accordingly, the Individual Judicial Defendants' motion for summary judgment (Dkt. #12) is **GRANTED in part**, and the Individual Judicial Defendants are entitled to judgment on the Section 1983 claim. The remaining counts in the Amended Complaint assert violations of Ohio law. As the Court has dismissed the only federal claim alleged against the Individual Judicial Defendants, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims asserted in the Amended Complaint. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992). Accordingly, Plaintiffs remaining state law claims are **DISMISSED** without prejudice.

      **IT IS SO ORDERED.**

                                 /s/ *Peter C. Economus* – 02/27/06
                                 **PETER C. ECONOMUS**
                                 **UNITED STATES DISTRICT JUDGE**